JOHN W. HUBER, United States Attorney (#7226)
AMANDA A. BERNDT, Assistant United States Attorney (#15370)
Attorneys for the United States of America
185 South State Street, Suite 300
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Email: amanda.berndt@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> PATTERSON CONSTRUCTION, INC., a Utah Corporation; BOX ELDER PROPERTIES, L.P., a Utah Limited Liability Partnership; AUTUMN VIEW PROPERTIES, L.P., a Utah Limited Liability Partnership; SUNSET MOUNTAIN MACHINERY, LC, a Utah Limited Liability Company; RONALD PARKER dba ROCKY MOUNTAIN EXCAVATORS; IGES INGENIEROS, LLC, dba GEOSTRATA, a Utah Limited Liability Company; STEPHEN SOWBY dba TWIN PEAKS ENGINEERING AND DESIGN; and JEFFERY B. DALTON, <br><br> Defendants. | Case No. 2:16-cv-00781 <br><br> **COMPLAINT** <br><br> Judge Robert J. Shelby |

Plaintiff, United States of America, by and through its undersigned counsel, complains against Defendants, and alleges as follows:

## INTRODUCTION

The United States of America, Plaintiff, brings this civil action to recover costs incurred by the Forest Service of the U.S. Department of Agriculture; the Bureau of Land Management of the U.S. Department of the Interior; and the National Park Service of the U.S. Department of the Interior, as a result of a wildfire known as the "Quail Fire." Incurred costs for the federal agencies total $1,649,440.38 plus applicable interest and penalties. The fire was ignited on July 3, 2012 by excavation activities in furtherance of a common enterprise engaged in by Plaintiffs. The Plaintiffs acted in a negligent or reckless manner in failing to observe reasonable industry safety precautions in the operation of the excavation on a hot, windy day when the risk of combustion of dry vegetation was high. The Quail Fire ignited in Utah County, Utah, and eventually burned approximately 2,222 acres of federal, state, and privately owned land.

## PARTIES

1.     Defendant Patterson Construction, Inc. is a Utah corporation with its principal place of business in Highland, Utah. Patterson Construction is in the business of developing, building, and selling residential homes.

2.     Defendant Box Elder Properties, L.P., is a Utah Limited Liability Partnership with its principal place of business in Highland, Utah. Upon information and belief, at all times pertinent to this Complaint, Box Elder owned five acres on the eastern side of the East Bench Estates Subdivision in Alpine, Utah.

3.     Defendant Autumn View Properties, L.P., is a Utah Limited Liability Partnership with its principal place of business in Highland, Utah. Upon information and belief, at all time

pertinent to this Complaint, Autumn View owned five acres on the western side of the East Bench Estates Subdivision in Alpine, Utah.

4. Defendant Sunset Mountain Machinery, L.C., is a Utah Limited Liability Company with its principal place of business in Highland, Utah. Sunset owns, leases, and operates excavation equipment, and as part of its normal business provides such equipment to other individuals and entities, including Patterson Construction, for use in excavation work.

5. Defendant Iges Ingenieros, LLC, dba Geostrata, is a Utah Limited Liability Company with its principal place of business in Bluffdale, Utah. Geostrata is in the business of geotechnical engineering, engineering geology, environmental engineering, and construction management, and provides geotechnical and environmental services.

6. Defendant Ronald Parker is an individual who resides in Salt Lake County, Utah. During times relevant to this action, he was either acting as or was employed by Rocky Mountain Excavators, and was also acting as an employee, agent, or servant of Patterson Construction or of Sunset Mountain Machinery.

7. Defendant Stephen Sowby is an individual who resides in Utah County, Utah, and was either doing business as or employed by Twin Peaks Engineering and Design at times relevant to this action, and was directing or coordinating certain aspects of construction and development on behalf of Patterson Construction or related entities.

8. Defendant Jeffery B. Dalton is an individual who resides in Utah County, Utah, and was employed by Sunset Mountain Machinery and was acting as an employee of Sunset at all times relevant to this action.

## JURISDICTION AND VENUE

9. The Court's jurisdiction is invoked under 28 U.S.C. § 1345.

10. The United States is the proprietor of federal public lands within the State of Utah and has the authority to protect federal lands and to recover any and all damages incurred as a result of fire or trespass to such lands.

11. This is a federal common law action in tort for damages caused by fire to lands of the United States.

12. Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because Defendants all reside in this District and the events or omissions giving rise to this action occurred in this District.

## FACTS

13. At all times alleged in this Complaint, Defendants Patterson Construction, Box Elder Properties, Autumn View Properties, and Sunset Mountain Machinery shared a joint proprietary interest in the development of real estate approximately one mile east of Alpine, Utah; combined their property, funds, and other resources in the development; shared a mutual right to control their venture as it proceeded; and thus engaged in a common enterprise.

14. On July 3, 2012, in Utah County, Utah, Defendant Patterson Construction, in furtherance of this common enterprise, arranged to have a trench excavated for geological testing as part of the prerequisites for developing the property.

15. Defendant Stephen Sowby, either individually or doing business as Twin Peaks Engineering & Design, acted as an agent of Patterson Construction in arranging for the excavation and giving direction as to how the excavation should be conducted.

16. Defendant Sunset Mountain Machinery provided a Komatsu track-hoe and an operator to perform the excavation. Employees or officers of Sunset Mountain were aware of the purpose, location, and time of the project when they provided the excavation equipment and operator.

17. Defendant Geostrata entered an agreement with Patterson Construction to assess geologic hazards and collect geotechnical samples from the trench, with all fieldwork to be performed under the direction of a member of the Geostrata staff.

18. Defendant Parker and Defendant Dalton were both experienced heavy equipment operators, and each had operated this particular Komatsu track-hoe on prior occasions.

19. Acting on behalf of Patterson Construction, Defendant Parker had coordinated earlier repairs of the Komatsu track-hoe. On July 3, 2012, Defendant Dalton was employed by Sunset Mountain Machinery, where part of his assigned duty was to oversee the proper maintenance and operation of the company's heavy equipment.

20. On the basis of prior experience and of maintenance responsibilities, both Defendants Parker and Dalton knew that the Komatsu track-hoe had a recent history of being difficult to start, and of stalling and having to be re-started, and both Defendants customarily used starter accelerants to accomplish such re-starts.

21. The National Weather Service had issued a "Red Flag Warning" for July 3, 2012 for the Wasatch Range, including the area where the Quail Fire ignited, meaning that a very high risk of wildland fires was present due to a combination of high temperatures, wind, low humidity, and high volatility of dried vegetation. As part of its "Red Flag Warning," the National Weather Service requested that people avoid any activities that could spark a fire.

22. From June 1 through July 2, 2012, nineteen or more wildland fires had ignited in Utah, eventually burning more than 200,000 acres. Five of these fires were in Utah County, all human-caused. A number of these fires, as well as the significant danger of wildland fires in Utah in early summer 2012, were widely reported on by numerous print and broadcast media throughout Utah.

23. None of Defendants (or anyone else) directed, organized, held, or participated in any safety meeting or the formulation of any safety plan for the trench excavation.

24. At approximately 10:00 a.m. on July 3, 2012, Defendant Ronald Parker arrived at the work site, having accepted an assignment from Sunset Mountain Machinery to operate the track hoe that morning.

25. When Parker arrived, representatives of Geostrata were already at the scene. The Geostrata representatives instructed him where and in what manner the trench was to be dug.

26. Defendant Parker operated the track-hoe from approximately 10:00 a.m. to 12:00 p.m., when Defendant Dalton arrived to take his place.

27. After Dalton operated the track-hoe for roughly 20 minutes, the engine stalled. Dalton attempted unsuccessfully to re-start the motor. When that failed, he asked for the assistance of one of the Geostrata representatives, and directed that an ignition accelerant (probably ether-based) in an aerosol can be sprayed into the engine. After repeated efforts with the accelerant, Dalton was able to start the engine again.

28. The ignition accelerant works by raising the temperature in the combustion chamber in the engine to a hotter-than-normal level.

29. The engine stopped again after a few minutes, and despite repeated sprays of the ignition accelerant, Dalton was unable to start the engine. He called Defendant Parker on the telephone, thinking that the vehicle may be out of fuel.

30. Parker returned to the scene, intending to refuel the track-hoe from the extra fuel tank in Parker's F-150 Ford truck. He and Dalton cooperated in another application of ignition accelerant to the Komatsu engine, and were able to get the track-hoe engine started.

31. Geostrata representatives were present at the scene and observed all of these activities.

32. Parker could not reach the track hoe for refueling from where the Ford truck was located, so he requested that Dalton "walk" the track-hoe downhill to the Ford. While Dalton was performing this maneuver, a fire ignited either under the track-hoe or immediately adjacent to it. Dalton turned partially and saw the flames burning behind him and to his left.

33. Despite Dalton's efforts to block the fire by hastily digging an earthen berm, the fire spread rapidly and burned out of control.

34. At the time the fire ignited, no water truck had been placed nearby. No effort had been made to wet down or cut down dry vegetation in the area of the excavation. No spotter had been designated for safety purposes. On information and belief, no fire extinguisher had been supplied in the Komatsu track-hoe or the Ford truck, or if an extinguisher was provided, it was inadequate to extinguish any fire that would likely start given the hot temperature, brisk wind, and abundance of dry, flammable material at the scene. No other efforts had been made to provide for fire safety.

35. No other cause or means were present by which the Quail Fire could have ignited, other than by operation of the track-hoe.

36. The Quail Fire burned for approximately seven days until it was suppressed, burning approximately 2,222 acres, the majority of which was U.S. Forest Service land. Suppression of the fire required the joint efforts of the Forest Service, the Bureau of Land Management, and the National Park Service.

37. The actual costs incurred by federal agencies in suppression of the Quail Fire totaled approximately $1,649,440.38, not including applicable interest and penalties. The exact amount of damages will be proven at trial.

### FIRST CAUSE OF ACTION
### (All Defendants) Negligence

38. As described above in paragraphs 12 through 37, Defendants acted negligently or recklessly in going forward with the excavation project on July 3, 2012, despite conditions that foreseeably increased the risk of a wildland fire, while failing to take reasonable safety precautions that would have prevented or mitigated the Quail Fire.

39. The Defendants' acts and omissions recklessly endangered the lives and property of those in or near to the path of the fire as well as the firefighters who suppressed the fire.

40. The Defendants' negligent or reckless acts and omissions were the proximate cause of the Quail Fire and of the damages incurred by the United States in suppression of the fire.

41. The United States is entitled to recover its damages under Utah and federal common law, and under § 65A-3-4, Utah Code Annotated.

42. Pursuant to 31 U.S.C. § 3717, the United States is entitled to continuing interest and penalties based on the damages demanded, as well as administrative costs and such costs and fees as the Court may deem appropriate.

43. In the alternative, an inference of causal negligence should be drawn under *res ipsa loquitur*, because (1) in the ordinary course of events, the Quail Fire would not have occurred had Defendants used due care; (2) the track-hoe and all facets of the excavation project were under the management and control of Defendants; and (3) the United States played no part in causing the fire. Under either standard, specific negligence or *res ipsa loquitur*, the Defendants are liable for the damages described in this Complaint.

## CONCLUSION

WHEREFORE, the United States prays the Court to grant judgment in its favor against Defendants for all costs and damages incurred by the United States as a result of the Quail Fire, including all costs for fire suppression, plus appropriate interest, penalties, costs, and fees as permitted by law.

DATED this 11th day of July, 2016.

JOHN W. HUBER
United States Attorney


/s/ Amanda A. Berndt
AMANDA BERNDT
Assistant United States Attorney

9